[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: HEARING IN DAMAGES
The plaintiff brings this complaint for violations of the solid waste statutes and regulations against Sanitary Services Corporation and its principal, Michael Botticello on premises located at 321 Olcott Street in Manchester, Connecticut. The Court entered a default against the defendants for failure to appear on January 24, 2001. The Commissioner now seeks the assessment of a civil penalty and certain injunctive relief as requested in his complaint.
The plaintiff alleges in his complaint that he is charged with the supervision and enforcement of the statutes of Connecticut respecting the environment including solid waste and is empowered pursuant to G.S. 22a-6
(a)(3) to bring legal proceedings to enforce such. The defendant, Sanitary Services, with a main place of business at 321 Olcott Street, Manchester, Connecticut has been operating a "transfer station" as defined in G.S. 22a-207 (10) in violation of G.S. 22a-208c which requires a permit for such operation to comply with the provisions of G.S. 22a-208a
CT Page 1365 from at least July 21, 2000. The defendant, Michael Botticello, as president, director and manager of the defendant, Sanitary Services, in its day-to-day operation had facilitated these violations by his actions or inactions and failure to obtain a permit for such construction and operations.
Eugene MacGillis, an Environmental Analyst II with the Bureau of Waste Management of the Connecticut Department of Environmental Protection responsible for enforcement for the Eastern District testified that upon learning from a representative of Connecticut Resources Recovery Authority (CRRA) that CRRA had ceased accepting loads from Sanitary Services at its facility in Hartford, he was asked to conduct an inspection of its premises at 321 Olcott Street in Manchester. On July 21, 2000 in the company of Robert Botticello, secretary of the corporation and manager in charge of the maintenance garage on Olcott Street he made such inspection and found seventy-four (74) roll-off containers containing solid wastes and recyclables and Botticello said he had no permit. He filed an inspection report. Plaintiff's Exhibit 1. He went to the Attorney General's Office to file a temporary injunction ordering the defendants to remove all solid wastes by July 28, 2000 and recyclables by August 4, 2000. He again visited the site on July 27, 2000 to monitor the removal of the solid wastes and recyclables in compliance with the injunction and found a one hundred (100) cubic yard trailer that was tarped which contained comingled recyclables and in the rear of the premises twenty-seven (27) roll-offs and dumpster-type containers containing solid wastes and recyclables. Robert Botticello was told to immediately cease operating a transfer station on the site. SeePlaintiff's Exhibit 2.
Stan Gormley, an Environmental Analyst with the plaintiff's office for fifteen (15) years testified that on July 28, 2000 he inspected the site of 321 Olcott Street because the department had obtained an ex parte temporary injunction from the Court and found that there was not compliance, there being numerous containers containing bulky and solid wastes for which a permit was needed. He took photographs of his observations, Plaintiff's Exhibit 4 and made a report of such observations. Plaintiff's Exhibit 3. He made inspections on July 31, 2000, August 7, 2000 and August 9, 2000 and made reports of each inspection respectively Plaintiff's Exhibit 5, 6 and 7. On July 31, 2000 there was still containers with solid waste. On both August 7 and 9, 2000, he was accompanied by Michael Botticello, the president of Sanitary Services and found about thirty (30) containers but found no containers had solid waste. He obtained an assessor's card of premises at 155 Spencer Street which demonstrates the ownership to be in the name of Botticello Brothers Realty as of August 30, 2001. The information on said card indicates that Sanitary Services Corp. entrance is on Olcott Street CT Page 1366 and the parcel has been split into two (2) parcels for the 2001 grand list, one of one (1) acre and the other of about four and a half (4-1/2) acres. Gormley testified that the town has purchased five (5) acres and leased it to Botticello and that the containers are still on the land belonging to Botticello.
Judge Berger executed an ex parte temporary injunction dated July 21, 2000 enjoining the use of the premises as a "transfer station," that all municipal solid waste and bulky waste to be removed from the site by noon of July 28, 2000 and all other solid waste including recyclable material by noon of August 4, 2000 upon a penalty of up to $25,000 per day per violation for any violation of the provisions of the injunction. Said temporary injunction was continued by Judge Booth on August 23, 2000, the defendants having failed to appear and default for failure to appear was entered on January 24, 2001. The defendant, Michael Botticello, filed a written appearance on August 27, 2001 but failed to appear at the hearing in damages or present any evidence in opposition to the plaintiff's claims. Where there is a default judgment and nothing more, the cause of action and every element necessary to establish it are admitted and all that remains is to fix the amount of damages. Kiessling v. Kiessling,134 Conn. 566, 568.
The Commissioner has produced evidence that the defendants were not in compliance with the provisions of the Court's injunction by the inspections made late in the day of July 28, 2001 and on July 31, 2001 but by the inspections done on August 7 and 9, 2001 the defendants had reach compliance. The plaintiff requests that defendants be found in contempt of the Court's order and a monetary penalty of $31,100 be imposed. Since the fundamental purpose of imposing monetary penalties is to force compliance and compliance has been met in a relatively short period of time, the Court finds that the lesser amount of $15,000 as the penalty of the contempt will more equitably serve the purpose. The Commissioner also requests injunctive relief to prevent further pollution at the site.
 ORDER
Wherefore based upon the foregoing law and the evidence presented at the hearing, the Court finds that the defendants were in contempt of the Court's order and assesses a civil penalty which is less than the maximum penalty, in the amount of $15,000 jointly and severally on the defendants and enjoins each defendant from further pollution of said site making the provisions of the temporary injunction permanent.
____________________ Corrigan, JTR CT Page 1367